ALBANY,
October, 1823.

VAN RENSSE-
LAER
v.
SHERIFF OF
ALBANY.

In the matter of SANDERS VAN RENSSELAER *against* THE
SHERIFF OF ALBANY.

AT the last *May* term, a rule was granted against *Van
Antwerp,* Sheriff of *Albany* county, to shew cause at the
last *August* term, why a *mandamus* should not issue, com-
manding him to convey certain lands of *Peter S. Van Rens-
selaer* to *Sanders Van Rensselaer,*

The facts noticed, on shewing cause, were as follows : *Ed-
ward Watrous* had a judgment in this Court against *Peter S.
Van Rensselaer* for $180, docketed *March 27th,* 1817.
*Robert Sanders* had another judgment in this Court, against
the same defendant, for $109,92, docketed *October 23d,*
1819. Under executions upon both these judgments, *Van
Antwerp,* as Sheriff, on the 20*th* of *October,* 1821, sold the
lands of the defendant to *Abraham A. Lansing,* at a bid of
$320, and executed the usual certificate of sale. Interme-
diate the time of docketing these two judgments, *Peter S.
Van Rensselaer,* the defendant, had executed several mort-
gages of his lands, two of which mortgages, amounting to a-
bout $1800, were, at the time of the Sheriff's sale and pur-
chase by *Abraham A. Lansing,* owned by him. One of them
he held as mortgagee, and the other as assignee. After these
transactions, *Sanders Van Rensselaer,* the *relator,* persuaded
*Peter S. Van Rensselaer,* the above defendant and mortgagor,
to confess a judgment to him, which was also docketed in
this Court on the 7*th December,* 1822. On the same day,
he (*S. V.*) left a certified copy of his judgment record with
the Sheriff, paid him $357, being the sum bid by *Lansing,*
with 10 *per cent.* interest, &c. and claimed to redeem as a
judgment creditor. *Lansing* had died since the sale, and
his representatives, hearing of this claim to redeem, and fear-
ing that a deed to *Sanders Van Rensselaer* would divest their

The act in
addition to the
act concerning
judgments and
executions, is
a remedial
statute and
ought to be so
construed as to
suppress the
mischief inten-
ded thereby to
be avoided,
and advance
the remedy
proposed.

It was inten-
ded for the
benefit of the
debtor, by pre-
venting a sac-
rifice of his re-
al property ;
and of the jun-
ior judgment
creditor, by
giving him a
chance to re-
deem the land
sold upon a
senior judg-
ment.

If a junior
creditor be-
come a pur-
chaser of real
estate on exe-
cution, he
must bid the
amount of the
execution, and
his own *lien,*
if he means to
secure himself
out of the
property sold.

On a sale by
execution, of

ALBANY,
October, 1823.

VAN RENSSE-
LAER
v.
SHERIFF OF
ALBANY.

real estate,
bound by a
mortgage,
younger than
the judgment
upon which
the estate is
sold, if the
mortgagee
mean to save
himself, he
must bid to the
amount of his
mortgage :
A mortga-
gee, or the as-
signee of a

rights under the two mortgages, gave notice to the Sheriff not to convey till these mortgages were satisfied. *Robert Sanders*, on the 18*th* of *January*, 1823, deposited $348 with the Sheriff, and claimed also to redeem under his judgment, alleging that he had discovered the previous *liens* of *Lansing*, and directing the Sheriff to return his execution *nulla bona*.

The argument, on shewing cause, was heard at the last term, and the Court took till the present term for advisement. It will be perceived, that one ground taken, on shewing cause, was, that the judgment of *Sanders Van Rensselaer* was obtained under such suspicious circumstances, as to warrant the Court in refusing all aid to him upon this motion. As the facts upon which this part of the argument proceeded are very fully considered in the opinion of the Chief Justice, it is unnecessary to detail them here. The material

mortgagee, as such, is not a grantee within the meaning of the act, and has no power to redeem ; and upon such sale, a creditor, by judgment younger than the mortgage, may redeem from the purchaser, and is entitled to a conveyance, and may thus obtain a preference to the mortgagee, though the *lien* of the latter be the oldest; for the creditor redeeming is in under the purchaser and takes all his rights.

Where W had a judgment, then L had a mortgage, then V had a judgment, all against the same man, and which were a *lien* on the same real estate—upon a sale on execution upon W's judgment, L, the mortgagee purchased ; and V then claimed to redeem, by paying the purchase money, with 10 *per cent.* &c. but L gave notice to the Sheriff, not to convey, till his mortgage was first paid : *held* that the Sheriff was bound to convey to V. And a rule for a mandamus was granted to compel him to give a deed.

Form of this rule.

The act does not invert the order of *liens*, but merely withholds a remedy from the mortgagee, which it grants to a judgment creditor. It violates no right, therefore, and is not, in this particular, unconstitutional ; for before the statute, a sale on an elder judgment divested all junior *liens*.

It is enough to entitle a judgment creditor to redeem, that his judgment is a *lien* at the time when he comes to redeem. It need not be a *lien* at the time of the sale The sale does not divest the title of the debtor, till the 15 months time for redeeming has expired ; and a judgment obtained against the debtor, at any time within the 15 months, is, therefore, a *lien*.

Where the debt, for which a junior judgment is confessed, is well secured otherwise than by the judgment, the judgment creditor ought not to be permitted to redeem to the prejudice of a mortgage *lien*, intermediate the senior judgment, on which the sale took place, and his own judgment on which he seeks to redeem. But the proper remedy of the mortgagee, in such a case, is in a Court of Equity, and this Court will, notwithstanding, compel the Sheriff, by *mandamus*, to convey to such junior creditor.

But they will, on request of the counsel for the mortgagee, make the rule for a *mandamus*, expressly, without prejudice to the rights of the mortgagee in any future litigation.

A decision of this Court, on summary application, is not *res judicata.*

The power to grant a *mandamus* is discretionary ; and will be refused where the end of it is private right merely ; and where the granting it will be attended with manifest hardships and difficulties.

A stipulation not to take out execution against the body or personal property of the defendant, in consideration of his confessing a judgment, does not prevent the judgment operating as a *lien* upon his real estate.

facts, as they were noticed, on granting the rule to shew cause, are stated, *ante*, 62-3 (*S. C.*)

ALBANY,
October, 1823.

VAN RENSSE-
LAER.
v.
SHERIFF OF
ALBANY.

*S. M. Hopkins*, shewed cause. 1. He said, that the representatives of *Lansing*, the purchaser, had given due notice to the Sheriff of their mortgages. and that he must allow no redemption till they were paid. But the junior incumbrancers paid no attention to the mortgage. *liens*. They tendered the money, only, which *Lansing* bid at the sale. We claim that the original order of the incumbrances is not to be disturbed. The other party claims to overreach us. This raises the question, whether the act (*sess.* 43, *ch.* 184,) can divest previous *liens*. Before this act, the incumbrancers might foreclose each other in their order. On bill in Equity, the junior incumbrancer must redeem or be foreclosed. That is a proceeding which brings all parties before the master ; and binds them to pay according to their respective priorities. The younger creditor must call the senior creditors before the Court, and redeem them, before he can reap the fruit of his *lien*. What, then, was the mischief to be remedied by the act ? was it that the mortgage under the registry act had priority ? No. The evil was, that not only the judgment creditor, but strangers, might buy at a reduced rate, and thus injure the defendant, or subsequent creditors. It was to remedy this, by giving a time of redemption, not to displace *liens*, that the late act was passed. If the *lien* of a mortgagee does not come within the mischief (and clearly it does not) it is saved. The answer given to us at the last term was, " you should have bid to the amount of your mortgages. You should have gone beyond the $300 up to your $1800 claim." *Cui bono* bid $2100 ? To whom belongs the balance ? If the *lien* is turned into money, the latter must go in the same order with the subject. The mortgagees are *to receive* the $1800, the amount of their mortgages ; and in order to this, it is said, they must first bid and pay the whole. To whom is the money to be paid by the mortgagees, who are thus called upon to bid beyond the judgment ? Must it be paid to the Sheriff, to remain with him till a junior creditor comes to redeem ? This is all, either useless—a mere sound—or if

ALBANY,
October, 1823.

VAN RENSSE-
LAER
v.
SHERIFF OF
ALBANY.

the mortgagees bid for an effective purpose, the money must be paid over by the Sheriff to some other person, and is a dead loss to them. If due to the mortgagees, and to be paid to them on redeeming, or at any other time, why are they to bid at all? This may all be done directly, by requiring the one who comes to redeem to pay our *lien*, without the idle formality of our bidding up the premises. It is a ceremony which makes no alteration in our rights. The obligation of bidding applies to another state of things. Suppose, instead of mortgages, these *liens* had all been judgments, and the property had been bid in under the senior judgment, at $500. The effect of this would be, that a junior creditor redeeming, would take the whole for that sum. The next junior creditor, on coming to redeem, would then be bound to pay, not only the $500, but the judgment in right of which the first redemption took place; and so on, through the whole order of the incumbrances; thus keeping up a perpetual auction.

2. But there is another point of view, in which these junior incumbrancers have no right to redeem from us. We are *grantees* of the land, within the meaning of the 2d section of the act, which provides, that it shall be lawful for the defendant, his heirs, &c. or *grantees*, to redeem within one year from the time of sale. We are grantees, subsequent to the judgment under which the sale took place. If A confess judgment for $1000, and alien, the *grantee* may redeem within the act. So of a mortgagee. By the 3d section, the defendant may, in all cases, redeem in preference to any creditor; and though the expression here is confined to the defendant, and does not extend, in terms, to his grantee, yet the latter is within the spirit of the provision; and, at any rate, the omission does not prejudice the right of redemption given to the grantee in the 2d section. A mortgagee, then, being considered a *grantee*, and the right to redeem, therefore, saved to him, *Lansing*, or his representatives, had a right to redeem as grantees. But it may be asked, what benefit do you claim from this right, never having made any attempt to redeem as grantee? To this we answer, that the purchase by *Lansing* was equivalent to an offer to redeem. *Lansing*, during his life, (his heirs now)

united two rights ; those of *purchaser* under the senior judgments and *grantee. Lansing* thus became both the man from whom redemption was to have been made, and the one to make it. This case is like the feudal one of extinguishment or merger, upon the meeting of two estates ; or like the remedies by operation of law, *retainer* or *remitter*, mentioned in *Blackstone's Commentaries.(a)* Whenever two different rights and remedies center in the same person, he is righted by operation of law. We cannot go and redeem as grantee, because we cannot apply to ourselves. Then there is, either no means of redemption whatever, or none short of paying our own *lien.* Suppose the case of an absolute grantee, who, for the better securing his title, or from any other motive, has bought and paid his money at a Sheriff's sale of the premises, upon execution on a judgment against his grantor : must he yield to a subsequent incumbrancer, and submit to have his right divested, because he cannot both *redeem* and be *redeemed ?* The only difference between the case supposed, and the present one is, that we are a conditional, instead of being an absolute grantee ; but this does not preclude our right to redeem. If our estate is conditional, it is the subject of redemption in its turn.

3. If we are mistaken in the construction of this act, we then ask, is it constitutional so far as it aims to divest our rights ? In this point of view, it can make no difference, that we have not bid high enough to save our *lien.* Within all the decisions on this subject, we can neither be deprived of our vested rights, nor have the legislature the power to modify them.(*b*) The Court will, if possible, construe the parts of an act which have a tendency to interfere with such rights, by adjudging this not to be the intent of the legislature.(*c*) It is a rule that statutes in violation of private right are void upon a principle common to our free institutions.(*d*)

Placed between these conflicting claims, the Sheriff is under no obligation to give the deed to *Sanders Van Rensselaer.* His rights and liabilities, in a situation very similar

ALBANY,
October, 1823.

VAN RENSSE-
LAER
v.
SHERIFF OF
ALBANY.

(a) 3 Bl.
Com. ch. 2.

(b) Fletcher
v. Peck, 6
Cranch, 136.
The People v.
Platt, 17
John. 195.
(c) id.
(d) 17 John.
215.

ALBANY,
October, 1823.

VAN RENSSE-
LAER
v.
SHERIFF OF
ALBANY.

to the present, are fully considered in *Van Cleef et al.* v. *Fleet.*(e)

4. The judgment of *Sanders Van Rensselaer* was not confessed till long after the sale. He had ample security for his debt, beside the land in question, and gave a stipulation to exempt the person and personal property of the defendant from execution. Is it equitable to sustain the claim to a deed under such circumstances ? A defendant might thus in all cases, after his own right is gone by the lapse of time, come in and redeem indirectly, through a friendly creditor. Is not such a proceeding in fraud of the statute ?

(e) 15 *John.*
147.

*Talcott,* (*Attorney General*) in support of the rule. That the judgment of *Sanders Van Rensselaer* was subsequent to the sale, can make no difference. It is equally a *lien* upon the land, as if it had been rendered before. The sale to *Lansing* did not divest the defendant's title. It is a mere *lien* upon the land, as was holden by this Court in *Bissell* v. *Payn.*(f) The act extends the right of redemption to all creditors, whose judgments are a *lien* on the debtor's real estate. Every judgment of a Court of Record is a *lien* upon lands of the debtor, which lie within the jurisdiction of the Court, though a decree of the Court of Chancery might not be so. There are certain judgments of inferior Courts, which are not a *lien* on lands. The act has in view the nature of the judgment, and wherever it will operate as a *lien*, the creditor may redeem.

(f) 20 *John.*
3.

I agree, that the act, if it attempts to divest rights which are vested by the common law, is void. The legislature have no power to pass such an act. But what is this case ? The mortgagees, who complain that their rights are to be divested, took their mortgages subsequent, and, of course, subject to the judgment under which the purchase was made. Now, so far from divesting their rights, they are secured and improved by the very provisions of the statute, which is censured as divesting them. Without this statute, their rights would have been *absolutely* divested by the sale. No remedy whatever would have remained to the mortgagees.

It is said, that, before the statute, they might have filed their bill, and have compelled a redemption according to the priority of these *liens*. So they might have done in this instance, since the statute, which has even extended the time, within which this may be done by a mortgagee. But they have not chosen to file their bill for this purpose, and it is now too late.

ALBANY,
October, 1823.

VAN RENSSE-
LAER
v.
SHERIFF OF
ALBANY.

We are told that *Lansing*, had he not been himself the purchaser, might have redeemed as a *grantee* within the 2d section of the act ; but it is now settled, both at law and in equity, that a mortgagee has a mere *lien*. He is not considered the grantee, or owner of the land. For all substantial purposes, the fee is in the mortgagor. The 2d section provides, that upon redemption by the *defendant* or *grantee*, the sale and certificate shall be null and void. It leaves the title of the grantee precisely where it was. Had the legislature intended to make the right of a mortgagee to redeem, the same with that of the grantee, they would have provided him a title by which he could hold, till redeemed from in his turn. Considered as a grantee, the land would be irredeemable in his hands ; for there is no provision in the act by which it can be redeemed from a grantee. According to the reasoning on the other side, a mortgagee for $100, may, by redeeming as grantee, hold land indefeasibly to any amount. By the act, (*sess.* 45, *ch.* 127, *s.* 2,) where the people are mortgagees, they are authorized to redeem lands sold by execution on a senior judgment. Here we have a legislative construction against the previous powers of any mortgagee to redeem, in any case, under the statute in question.

But suppose the mortgagee can redeem, he has made no attempt to do so ; nor has he come here to redeem. He is the purchaser : we claim to redeem of him. The act provides, that we may do this by paying the purchase money and interest. This we have done. We are not bound to notice any other debts, unless they are judgment debts, in the hands of one who has before redeemed. When we come, as here, to redeem of a purchaser, we are bound to pay neither judgments nor mortgages. We have nothing

ALBANY,
October, 1823.

VAN RENSSE-
LAER
v.
SHERIFF OF
ALBANY.

therefore, to do with *Lansing's* rights as mortgagee. It is only as purchaser that we are bound to notice him. The act never intended to protect him as mortgagee. A perpetual auction is, it seems, to be kept up, and yet the Court are asked to place such a construction upon the statute as stops the auction at once.

As to the idea of redress by operation of law—suppose a judgment creditor purchases the land ; in that case the right and the remedy are as much centered in him as in the mortgagee who purchases. Both are mere creditors, having a *lien* for their debts ; yet the former may be redeemed. Here is no inconvenience to the mortgagee. He should have bid to the value of the land. He would then, after paying the judgment, have held the surplus money to pay his mortgage. This is not, as has been supposed, mere *ceremony* or *sound*. As the one who should afterwards come to redeem, would be obliged to pay him the whole sum which he had bid, which is the only means of obtaining his money, it is, for him, a *sound* very necessary to be heard.

WOODWORTH, J. (after stating the facts.) The judgment of *Sanders Van Rensselaer*, though after the sale, was a *lien* upon these lands, and entitles him to redeem as judgment creditor. It was objected, on the argument, that there was a stipulation not to take out execution upon this judgment. This was for the defendant's benefit, and does not prevent its operating as a *lien* upon the real estate. *Lansing*, being a mortgagee of these lands, and the assignee of another mortgage on the same lands, chooses to become the purchaser. He died, and his representatives now insist that, in his right as a mortgagee, they are entitled to redeem in preference to *Sanders Van Rensselaer*. *In limine*, there is a difficulty which interposes against setting up this claim ; for, as *mortgagees*, they have never attempted to redeem. But we are clear on the other ground, that they were never, as such, entitled to redeem. This is a *casus omissus* in the statute. The right is claimed under the 2d section of the act which authorizes the defendant or his *grantees*

to redeem ; and the *mortgagee* is said to be a *grantee*, within the meaning of the statute. *Grantee* is a word of well known signification : it means here, *the purchaser of the estate.* The *mortgagee* is not the owner. The mortgage is a mere security for his debt. It is not such an interest as can be sold on execution against him : nor does he come within the technical meaning of the word *grantee.* At the session of 1822, the legislature thought it necessary to pass an act,(*h*) enabling the people of the state, when *mortgagees*, to exercise this right of redemption as mortgage creditors. This is a legislative construction, and accords, in our view, with the plain interpretation of the statute under consideration. We are clear, that mortgagees are neither within its letter or spirit ; and, consequently, the rule must be made absolute.

SUTHERLAND, J. concurred.

SAVAGE, Ch. J. (after adverting to the facts which appeared upon the motion for a rule to shew cause.) It now farther appears, that the judgment of *Sanders Van Rensselaer* was by confession for a debt already secured by bond and mortgage, on lands, the sale of which was the consideration for the debt ; and that he gave the defendant a stipulation, exempting his person and personal property from execution.

Under these circumstances, the Sheriff asks the advice of the Court, as to whom he shall convey ; and *Sanders Van Rensselaer* applies for a *mandamus*, commanding the Sheriff to convey to him.

This draws in question the construction of the " *act in addition to the act concerning judgments and executions,*" passed *April* 12, 1820. The 1st section of this statute provides, that all Sheriffs, after the 1*st* day of *May* then next, upon a sale of real estate by execution, instead of conveying absolutely, as heretofore, shall give a certificate of the sale, setting forth certain particulars ; and that if the property shall not be redeemed according to the act, the purchaser shall be entitled to a deed. A duplicate of the certificate is to be filed. This part of the act has been complied with. The 2d section authorizes the defendant, his

*Margin notes:*

ALBANY,
October, 1823.

VAN RENSSELAER
v.
SHERIFF OF
ALBANY.

(*h*) Sess. 45,
ch. 127, s. 2.

ALBANY;
October, 1823.

VAN RENSSE-
LAER
v.
SHERIFF OF
ALBANY.

heirs, executors, administrators or *grantees*, within one year after the sale, to redeem, on paying the purchaser or the Sheriff, the purchase money, with 10 *per cent.* interest. On making this payment, the sale and certificate are declared void. The 3d section authorizes any creditor, having a decree in Chancery or judgment at law, which is a *lien* on any real estate so sold, within 15 months after sale, *in default of the defendant*, to redeem the lands in the manner prescribed in the 2d section ; the defendant in all cases having preference of any creditor. The creditor redeeming acquires all the rights of the purchaser. Creditors may redeem from each other, on paying the redemption money before paid, with 7 *per cent.* thereon, and the amount of the *liens*, by judgment or decree, of the creditor from whom the land is redeemed. The 4th section directs the Sheriff, at the expiration of the 15 months, to give a deed accordingly, to the purchaser or creditor, if the property has not been redeemed by the defendant.

Upon this statute several questions have been raised, some of which it is necessary to consider.

The object of the legislature undoubtedly was, 1. To relieve the debtor, by preventing a sacrifice of his real estate, at Sheriff's sale ; and 2. To enable creditors, other than the plaintiff, after a sale on execution, to satisfy their debts, by redeeming, where the property has been sold below its value. This statute is evidently remedial ; and in its exposition, it is our duty to bear in mind the *evil* intended to be prevented, and the remedy proposed ; and so to construe the act, as to suppress the evil and advance the remedy.

1. It has been argued, and no doubt correctly, that the legislature did not mean to invert the order of *liens* upon real estate ; and if the act has that effect, it must be owing to the negligence of creditors. If a junior creditor become a purchaser, though under a senior judgment, he must bid the amount of the older execution, and of his own *lien*, if he intends to secure himself out of the property sold. Before the passing of the act, a sale, under an older judgment, destroyed all junior *liens*. The purchaser might thus make a speculation at the expense both of the debtor and junior

ALBANY,
October, 1823.

VAN RENSSE-
LAER·
v.
SHERIFF OF
ALBANY.

judgment creditors. Now, these creditors may redeem; and the act thus operates beneficially both for them and the debtor, as the property is made to pay more debts, and it probably goes at its value, if encumbered to that amount. The statute, then, has no injurious effect upon *liens.* A mortgagee is placed in no worse situation than he was in before the act, even allowing that he has not the privilege of redeeming like a judgment creditor. In this, the statute violates no right. It merely withholds from him a remedy extended to judgment creditors. It is, to be sure, somewhat remarkable, that the statute has not given him the same remedy. I can see no good reason for a discrimination between mortgagees and judgment creditors, as both have a *lien* on the estate. This must, however, be a *casus omissus*, unless mortgagees were intended to be embraced by the word *grantee.*

2. It was contended that *mortgagees* are to be considered *grantees* within the meaning of the act. But it has been repeatedly decided in this Court,(*i*) that a mortgagee, out of possession, has only a chattel; that the mortgagor has the fee, and may maintain trespass against the mortgagee.(*j*)

3. Another point raised is, that the judgment creditor, to be entitled to redeem, must have a subsisting *lien* at the time of the Sheriff's sale. The statute expresses no such limitation: its terms are general. The only qualification necessary to entitle a creditor to redeem is, that his judgment or decree *shall be a lien.* In my opinion, it comports best with the spirit and letter of the act, to admit any creditor to redeem, whose judgment or decree is a *lien* at the time of redemption. The estate of the debtor is not changed by the sale and certificate. The purchaser acquires no title till he receives a deed.(*k*) A creditor who obtains judgment subsequent to the sale, has a *lien* upon the estate of the debtor, and may accordingly redeem.

In my opinion, therefore, *Sanders Van Rensselaer* is entitled to a Sheriff's deed, provided his judgment has been fairly obtained. It appears that he sold the debtor a farm, to secure the value of which, he took a mortgage on the same land, and 40 acres more, the latter being subject to a

(*i*) *Jackson*
v. *Willard,* 4
*John. Rep.* 41.
*Coles* v. *Coles,*
15 *id.* 319.
(*j*) *Runyan* v. *Mersereau,* 11 *id.*
534.

(*k*) *Bissell*
v. *Payn,* 20
*id.* 3.

ALBANY,
October, 1823.

VAN RENSSE-
LAER
v.
SHERIFF OF
ALBANY.

prior mortgage. He persuaded the defendant to confess a judgment on the bond accompanying the mortgage, and as an inducement, deducted 200 dollars, and gave a discharge of the defendant's person and personal property. In equity, he would not be permitted to enforce this judgment, to the exclusion of other creditors, having other security, which we are to presume is sufficient. The transaction operates as a fraud upon the other creditors of the defendant, and particularly so upon the purchaser in this case, who must sustain a heavy loss, and is remediless at law, unless the purchase be retained. The facts would justify the presumption of connivance with the debtor; and, in my opinion, if not enough to render the judgment void as to other *bona fide* creditors, are sufficient to send the parties into a Court of Equity, where justice may be done.

This Court may exercise a discretionary power, as well in granting as in refusing a *mandamus*; as where the end of it is merely a private right, and where the granting it would be attended with manifest hardships and difficulties, &c.(*l*)

*(l) Bac. Ab.*
*Mandamus,*
*(E.)*

In this view of the case, we should, perhaps, be justifiable in denying the motion; but as our decision is not *res judicata*, I assent to the issuing the *mandamus*, believing that the proper remedy for the representatives of *Lansing* is to be found in the Court of Chancery.

This being the opinion of the Court, *Hopkins* proposed that the rule be entered, with a clause expressly *saving the rights of his clients in any future litigation.*

*Curia.* Take your rule in that form.

RULE:

*In the matter of the application of San-*
*ders Van Rensselaer, for a mandamus to*
*the Sheriff of the county of Albany.*

On motion of Mr. *Attorney General*, on behalf of *Sanders Van Rensselaer*, for a *mandamus* to issue to *Cornelius Van Antwerp*, Sheriff of *Albany*, commanding him to execute a deed of conveyance of the premises mentioned in his application, to the said *Sanders*; and on reading affidavits, stating the facts on which

the same is grounded; and on hearing Mr. *Hopkins* on behalf of the representatives and assignees of *Abraham A. Lansing*, deceased, opposing the said motion; and on reading affidavits shewing the facts on which that opposition is founded—*It is ordered*, that a writ of *mandamus* issue to the said *Cornelius Van Antwerp*, Sheriff, &c. according to the said motion, *without prejudice to the representatives and assignees of the said Abraham A. Lansing, in any future litigation.*